United States District Court
Southern District of Texas
**ENTERED**
November 30, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:18-cv-00271

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, *PLAINTIFF*,

v.

DIMITRIOS PAGOURTZIS, ET AL., *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

This case concerns an insurance dispute following the 2018 Santa Fe High School shooting. The parties disagree whether a homeowner's insurance policy covers tort claims arising from both the shooting and the events leading up to it. Before the court is the insurer's motion for summary judgment.[1] Having considered the arguments, the summary-judgment record, and the applicable law, the court agrees with the insurer that an exclusion applies.

### I. BACKGROUND

In May 2018, Dimitrios Pagourtzis, then a high-school student, shot at least twenty-three students and teachers at Santa Fe High School, killing ten.[2] In a span of three lawsuits, the family members and estates of the shooting victims, along

---

[1] Dkt. 24.
[2] Dkts. 24 at 6, 28 at 5, 29 at 11, 31 at 7.

with some of the surviving victims themselves, sued both Dimitrios and his parents, Antonious and Rose Marie Pagourtzis, in state court.[3] The plaintiffs in those actions alleged various theories of negligence, gross negligence, assault, and battery.[4]

The assault and battery claims apply to Dimitrios, who is now awaiting criminal prosecution.[5] The petitions contain allegations that, on May 18, 2018, Dimitrios took his parents' firearms to Santa Fe High School and proceeded to kill ten of his classmates and teachers, wounding at least thirteen others.[6] According to the petitions, Dimitrios intended to, and did in fact, cause physical harm to the victims.[7]

The negligence and gross-negligence claims, on the other hand, are made against Dimitrios's parents.[8] Those allegations shift the temporal focus to the events leading up to the shooting. It is alleged that Antonious and Rose Marie negligently allowed Dimitrios access to their firearms and failed to take corrective action when he began exhibiting signs of an emotional disturbance.[9]

In response to the lawsuits, the Pagourtzises filed a claim with their homeowners'-insurance policy carrier, Certain Underwriters at Lloyds, London, seeking indemnity and a defense. Lloyds denied the coverage and filed this

---

[3] Dkt. 24:1–10.
[4] *Id.*
[5] Dkts.1 at 2, 30 at 11–12.
[6] Dkts. 1 at 1, 24 at 7, 31 at 7.
[7] Dkt. 24:8.
[8] Dkt 24:1–10.
[9] *Id.*

declaratory-judgment action, seeking a declaration that the insurance policies it issued to the Pagourtzises do not cover the claims made in the underlying tort suits. The Pagourtzises believe otherwise, and so do the many parties who have intervened in this case.[10] The insurer's summary-judgment motion has now placed this insurance-coverage issue before the court.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."[12] If the moving party meets its initial burden, the non-movant must then designate specific facts to show that there is a genuine issue of material fact.[13] Evidence is viewed in the light most favorable to the nonmovant.[14]

## III. ANALYSIS

### a. The Eight-Corners Rule

Texas courts apply the eight-corners rule to determine when an insurer has a duty to defend its insured. An eight-corners analysis requires courts to compare only the allegations in the pleadings from the underlying lawsuit to the insurance policy.[15] Hence the rule's name: The contents within the four corners of the

---

[10] The interveners in this case consist of the plaintiffs in the three underlying state-court lawsuits.
[11] FED. R. CIV. P. 56(a).
[12] *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).
[13] *Id.*
[14] *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).
[15] *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494 (Tex. 2020).

3

pleadings are compared to the same within the four corners of the policy. If the allegations in the pleadings do not give rise to a claim covered by the insurance policy, then the insurer is not required to defend the insured.[16]

### b. The insurance policies exclude coverage for claims of assault and battery.

For two one-year periods beginning in May of 2017, Lloyds carried a homeowner's insurance policy for the Pagourtzises.[17] These two policies generally covered the Pagourtzises for accidents that might result in bodily injury or property damage.[18] But like many homeowner's insurance policies, the Pagourtzises' policies excluded certain acts from coverage. As relevant here, both of the Pagourtzises' policies expressly excluded assault and battery claims:

> **ASSAULT AND BATTERY ENDORSEMENT**
> It is agreed that **no coverage** shall apply under this policy for any claim, demand or suit arising out of Assault and Battery, and Assault and Battery shall be deemed an accident, whether or not committed by or at the direction of the Insured.[19]

There is no serious dispute that the claims against Dimitrios fall within the above assault-and-battery exclusion.[20] Nor do the Pagourtzises take issue with the

---

[16] *See id.*
[17] Dkts. 24-11, 24-12. In its complaint, Lloyds contends that the complained-of acts in the plaintiffs' state-court petitions fall outside the one-year policy period that began in May 2017. Dkt. 1 at ¶ 21. It does not renew this contention in its motion for summary judgment, so the court will assume both policies apply.
[18] Dkts. 24-11 at 34–42, 24-12 at 36–44.
[19] Dkts. 24:11 at 26, 24:12 at 26 (emphasis in original).
[20] In a couple of stray paragraphs, however, some of the intervenors argue that the court should abate these proceedings to await Dimitrios's mental-competency determination in his criminal prosecution. Dkts. 29 at ¶ 11, 28 at ¶ 36. Presumably, they believe that if he is found incompetent, the common-law element of intentionality in assault and battery will fail. Giving that argument the benefit of the doubt, the court nevertheless rejects it. When applying the eight-corners rule, courts look only to the "the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). The claims in the state-court petitions are for

exclusion's applicability to the negligence and gross-negligence claims against themselves. They do not refute that exclusions for assault and battery, like the one above, exclude even negligence claims, so long as they arise from underlying assaults and batteries. Indeed, Texas courts have held just that.[21] The point of disagreement is instead over a scrivener's error.

### c. A scrivener's error in the assault-and-battery exclusion does not change the outcome.

The Pagourtzises and intervenors seize on a notable mistake within the policies' assault-and-battery clause. By its terms, the clause deems assault and battery "an accident," which the policies would otherwise cover: "Assault and Battery *shall be deemed an accident*, whether or not committed by or at the direction of the Insured."[22] Lloyds acknowledges this drafting mistake, admitting that the word "not" should have been placed after the word "shall." Thus, if Lloyds could do it over again, the policy should read like this:

> **ASSAULT AND BATTERY ENDORSEMENT**
> It is agreed that **no coverage** shall apply under this policy for any claim, demand or suit arising out of Assault and Battery, and Assault and Battery shall [*not*] be deemed an accident, whether or not committed by or at the direction of the Insured.

---

assault and battery, which the policies exclude. Dkt. 24:8. The court thus looks no further than what the law permits.

[21] *See, e.g.*, *Garrison v. Fielding Reinsurance, Inc.*, 765 S.W.2d 536, 538 (Tex. App.—Dallas 1989, writ denied) (holding that an insurance policy's exclusion for assaults and batteries applied when a negligence lawsuit against a store for inadequate security was precipitated by an unknown person assaulting the plaintiffs in the store's parking lot); *Atain Specialty Ins. Co. v. Sai Darshan Corp.*, 226 F. Supp. 3d 807, 819 (S.D. Tex. 2016) (applying the *Garrison* principle); *Tarrant Cnty. Ice Sports, Inc. v. Equitable Gen. Life Ins. Co. of Okla.*, 662 S.W.2d 129, 131 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.) (holding the same).

[22] Dkts. 24:11 at 26, 24:12 at 26 (emphasis added).

5

While the "not" omission is clear to all the parties here, they disagree on the omission's effect. The Pagourtzises and intervenors contend that the mistake renders the contract ambiguous. And ambiguity, they correctly say, is always resolved in favor of the insured.[23] Lloyds, in contrast, insists that this is just a simple typographical error and that the court can, and should, read "not" into the contract.

When interpretive issues like this arise, what counts is the text, not some extratextually derived purpose. This is true even when fidelity to the text produces a disagreeable result. Judges can no more amend the words of Congress than they can of private parties to a contract. Simply put, the judicial endeavor begins and ends with what the text requires.

But for nearly every rule there is an exception. An evident typographical mistake (a.k.a. "a scrivener's error")—which would be textually simple to correct—warrants the rare exercise of judicial textual revision. Making such a correction is not "disobedience" to the text,[24] but rather an undertaking to "*make sense* of the text."[25] To that end, a "typographical mistake must yield to the well-established doctrine that written contracts will be construed according to the intention of the

---

[23] *See Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990).
[24] *See* Daniel A. Farber, *Statutory Interpretation and Legislative Supremacy*, 78 GEO. L.J. 281, 289 (1989) ("If the directive contains a typographical error, correcting the error can hardly be considered disobedience.").
[25] ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 235 (2012) (emphasis in original).

6

parties, notwithstanding errors and omissions . . . ."[26] In the event of an omission, the court may supply the "words, names, and phrases obviously intended" by the parties.[27] Reading the insurance policies in their entirety, it's clear what Lloyds and the Pagourtzises intended: that assaults and batteries be excluded from coverage. The policies' context shows why.

Start with the assault-and-battery clause itself. The first phrase expressly states that "no coverage shall apply under this policy for any claim, demand[,] or suit arising out of Assault and Battery . . . ."[28] That introductory phrase—which underscores and bolds "no coverage"—indicates a plain intent. But looking at the clause in isolation is not enough. The surrounding language, too, confirms that an error has been made. The assault-and-battery clause, for example, follows a heading in the policy that reads "Mandatory Exceptions"—clearly signifying that what follows will be excepted from coverage. Even more, the assault-and-battery clause is found on the same form as other agreed-upon instances in which Lloyds expressly disclaims coverage: transmission of communicable diseases, claims for punitive damages, pollution, trampoline use, and animal-related injuries.[29] And to further remove any doubt, elsewhere the policies expressly exclude from coverage intentional acts—like assault and battery—that result in bodily injury or property

---

[26] *City of Galveston v. Galveston Mun. Police Ass'n*, 57 S.W.3d 532, 539 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (quoting *Ussery Invs. v. Canon & Carpenter, Inc.*, 663 S.W.2d 591, 593 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd)).
[27] *Id.*
[28] Dkts. 24:11 at 26, 24:12 at 26.
[29] Dkts. 24:11 at 26–27, 24:12 at 26–27.

7

damage.[30] In short, the policies give a clear message as to whether the parties intended that assaults and batteries be covered: they did not.

Rather than infer this intent from the context, the Pagourtzises and intervenors contend that the "not" omission creates, at best, an ambiguity. But this argument undersells the effect of the omission. The omission does not create mere "doubtfulness or uncertainty"[31] about what the policy means. It instead creates a contradiction within the policy itself. And such contradictions are precisely what the scriveners'-error doctrine seeks to prevent.[32] The typographical error thus does not change the assault-and-battery clause's applicability.

\* \* \*

In sum, the policies' assault-and-battery clauses apply to the tort claims alleged against the Pagourtzises in the underlying state-court lawsuits. And the fact that each of the policies contains an identical typographical error does not change that conclusion. Lloyds therefore has no duty to defend or indemnify the Pagourtzises in the underlying lawsuits, and the court grants its motion for summary judgment (Dkt. 24).

Signed on Galveston Island on this, the 30th day of November, 2020.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

[30] *See, e.g.*, Dkt. 24:11 at 42 ("Coverage C (Personal Liability) and Coverage D (Medical Payments to Others) do not apply to: a. bodily injury or property damage which is caused intentionally by or at the direction of the insured.").

[31] *Ambiguity*, BLACK'S LAW DICTIONARY 100 (11th. ed. 2019).

[32] *See supra* note 23 at 235–36 (stating that the goal of correcting scrivener's errors is to "cause [the text] to make sense").